IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MIGUEL HUMBERTO MEDINA-CAMPOS, §
§
    Petitioner, §
§
v. § 2:15-CV-0182
§
UNITED STATES OF AMERICA, §
§
    Respondent. §

## REPORT AND RECOMMENDATION
## TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Defendant MIGUEL HUMBERTO MEDINA-CAMPOS has filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned finds defendant's claims are without merit and recommends they be DENIED.

### I.
### FACTUAL AND PROCEDURAL HISTORY

On March 21, 2014, defendant was charged by indictment with the felony offenses of possession with intent to distribute 500 grams or more of methamphetamine and aiding and abetting (Count One), possession with intent to distribute 500 grams or more of cocaine and aiding and abetting (Count Two), and possession with intent to distribute 1 kilogram or more of heroin and aiding and abetting (Count Three). *United States v. Medina-Campos*, No. 2:14-CR-0022.

On May 20, 2014, defendant pled guilty to Count Two of the indictment and signed Factual Resume which was submitted in connection with his plea. The Factual Resume stated:

> On or about March 12, 2014, in the Amarillo Division of the Northern District of Texas, and elsewhere, Miguel Humberto Medina-Campos, defendant, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a schedule II controlled substance.
>
> On March 12, 2014, at approximately 9:13 a.m., a Texas Department of Public Safety (TXDPS) Trooper Casey Dawson conducted a traffic stop on a white 2012 Toyota Corolla for following too closely to another vehicle near mile marker 102 on Interstate 40 in Carson County, Texas, which is a violation of the Texas Transportation Code. The Trooper identified the female driver. The passengers were identified as Miguel Humberto Medina-Campos and a second female.
>
> After stopping the vehicle, the Trooper noticed numerous signs that led him to believe that Medina-Campos might be involved in criminal activity, including inconsistent information provided by Medina-Campos and the two women about their trip, which they claimed was to Wichita, Kansas. After the traffic stop was finished, Trooper Dawson returned to the driver her driver's license, car rental agreement, and the identification documents of Medina-Campos and the other passenger. Trooper Dawson then asked the driver if he could talk to her some more, and after a few minutes, asked her for consent to search the vehicle. The driver consented to a search. Trooper Dawson then asked the female passenger and Medina-Campos for consent to search the vehicle. Medina-Campos and the female passenger also consented to a search of the vehicle. During the search of the vehicle, Trooper Dawson located two heat sealed bundles in the right rear door panel, which he suspected contained illegal drugs.
>
> After discovering the suspected drugs, Trooper Dawson arrested Medina-Campos and the two women and advised them of their constitutional rights. Trooper Dawson asked Medina-Campos if the drugs were really going to Wichita. Medina-Campos said no, Atlanta. Trooper Dawson asked if it was "Ice," a term for methamphetamine. Medina-Campos said yes and also admitted there was cocaine and heroin. The vehicle, along with Medina-Campos and the two women were transported to the TXDPS Office in Panhandle, Texas for further investigation and a more thorough search of the vehicle. During a further search of the vehicle at the TXDPS Office, troopers found twenty-seven (27) heat sealed bundles of suspected narcotics in both rear passenger doors. The bundles were packaged in three (3) different ways. An agent from the Drug Enforcement Administration (DEA) field tested three (3) of the different packaged bundles and one bundle tested positive for the presence of methamphetamine. A second differently packaged bundle with the

initials "CH" tested positive for heroin. A third differently packaged bundle tested positive for cocaine.

A DEA Task Force Officer (TFO) read Medina-Campos his constitutional rights and he agreed to waive those rights and speak with the DEA TFO. Medina-Campos said that the women had nothing to do with the narcotics. The TFO asked Medina-Campos if he had knowledge of the quantity and type of narcotics concealed in the vehicle. At that time Medina-Campos stated that the vehicle contained four (4) kilograms of cocaine, two (2) kilograms of heroin, and eighteen (18) pounds of crystal methamphetamine. Medina-Campos stated that he was taking full responsibility for the narcotics. The TFO asked Medina-Campos if he was being paid for delivering the narcotics. Medina-Campos stated that he was being paid $1,500 for each kilogram that was being transported. In a subsequent interview Medina-Campos said he was delivering the drugs to Atlanta to repay a debt.

The TFO weighed the drugs and determined that the cocaine weighed approximately four (4) kilograms, the methamphetamine weighed approximately thirteen (13) kilograms, and the heroin weighed approximately two (2) kilograms.

Subsequent testing by the DEA South Central Laboratory confirmed that the substance Medina-Campos possessed was, in fact, cocaine, a Schedule II controlled substance, with an approximate weight of 3.889 kilograms and confirmed that the other substances were methamphetamine weighing approximately 11.12 kilograms, and heroin weighing approximately 1.996 kilograms.

Medina-Campos admits that he knowingly possessed approximately four (4) kilograms of cocaine, a Schedule II controlled substance, and that he possessed the cocaine with the intent to distribute it.

[2:14-CR-022, Dkt. 25 at 2-3]. Pursuant to a Plea Agreement also filed May 20, 2014, Medina-Campos stipulated to the truthfulness and accuracy of the Factual Resume, swore the facts in the factual resume were true and correct and acknowledged the Factual Resume would be submitted as evidence. He averred his plea of guilty was freely and voluntarily made, and stated that after thoroughly reviewing all legal and factual aspects of his case with his lawyer, he was fully satisfied with his lawyer's legal representation and concluded it was in his best interest to enter into the plea agreement and plead guilty rather than proceed to trial because he was, in fact, guilty of the charged offense. The Court accepted Medina-Campos's plea of Guilty.

On June 23, 2014, a Presentence Investigation Report (PSR) was filed with the Court under seal. Based on defendant's criminal violation the Total Offense Level was determined to be 38, with a reduction of 2 points because Medina-Campos met the "safety valve" criteria of 18 U.S.C §3553(f)(1)-(5), and reductions of 2 points and 1 point because Medina-Campos accepted responsibility for his crime (total of 3 points) .

On July 17, 2014, the District Judge conducted a sentencing hearing at which Medina-Campos was sentenced to a term of 126-months imprisonment. Defendant did not appeal the conviction and sentence to the United States Court of Appeals for the Fifth Circuit.

On June 2, 2015, defendant Medina-Campos filed the instant Motion Under 28 U.S.C. §2255, and on July 17, 2015 the government filed their response to defendant's motion to vacate. On May 23, 2017 the Court ordered defendant to state whether he agreed the Court could consider trial counsel's affidavit submitted with the government's answer or whether he disagreed. If defendant objected to the consideration of trial counsel's affidavit, he was to specify the specific portions in the affidavit to which he agreed or disagreed. Defendant filed his objection to consideration of the affidavit on May 30, 2017 and on June 5, 2017 the government filed its response.

## II.
## DEFENDANT'S ALLEGATIONS

The Court understands defendant to present a claim that he was denied effective assistance of trial counsel because counsel failed to pursue or advise him about a motion to

suppress.[1] Defendant also appears to assert, in a footnote, that he does not understand English well and that counsel was ineffective for failing to have an interpreter present during their communications.

## III.
## MERITS

In its response filed July 17, 2015, the government thoroughly and accurately briefed statutory and case law regarding the applicable standards of review for relief under 28 U.S.C. §2255 proceedings, and for claims of ineffective assistance of counsel. It is not necessary to repeat the government's briefing regarding these clearly established standards of review.

Defendant Medina-Campos asserts he was denied his constitutional right to effective assistance of counsel because trial counsel failed to effectively communicate with him in a language he understood and failed to pursue or advise him about a motion to suppress.

Specifically, defendant argues law enforcement had no valid basis to conduct a traffic stop and that law enforcement's actions were not reasonably related to the traffic stop. He contends law enforcement's actions constituted a violation of the Fourth Amendment protection against unreasonable searches and seizures. Defendant argues the traffic stop was unjustified at its inception because the trooper did not have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or was about to occur. Defendant also takes issue with the prolonged detention which he argues affected the detainees ability to freely consent to the search of the vehicle.

---

[1] Defendant also states in his motion that trial counsel was ineffective for failing to advise him that duress could be a defense to the charges. However, while defendant makes this statement he has failed to address this claim and failed to present any support for it. To the extent defendant argues this point, the Court finds the statement to be conclusory and without any support and/or merit and, as such, finds this claim should be denied.

To the extent defendant is attempting to present to this Court the merits of a motion to suppress which defendant waived at the trial court level, the Court notes the two are mutually exclusive. As long as defendant understood his rights, including the right to file a motion to suppress, and knowingly and voluntarily waived those rights in exchange for a plea agreement, he cannot now attempt to litigate the very issue he waived.

Defendant Medina-Campos appeared before the trial court and was admonished about the nature of the charge against him, including the mandatory minimum penalty under the law, about his rights, and about the consequences of a guilty plea pursuant to an agreement should he choose to enter one. [2:14-CR-022, Dkt. 26]. Defendant chose to proceed, was placed under oath and pleaded guilty. The United States District Court Judge personally addressed defendant, heard his answers under oath, and accepted his plea which the Court found to be knowingly and voluntarily made. [*Id.* at 2].

A motion to vacate can be decided without an evidentiary hearing if the record conclusively establishes that a petitioner is not entitled to relief under § 2255. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir.1992). Defendant MEDINA-CAMPOS alleges he did not understand English very well and therefore he did not fully understand the proceedings against him. Trial counsel stated in her affidavit that she visited defendant six (6) times between her appointment date and the plea hearing date and that she utilized the services of an interpreter each time a plea agreement was discussed thereby completely rebutting defendant's argument that he did not understand. [Dkt. 6 at 7]. Even without considering this affidavit, however, the record itself demonstrates that the Court communicated with defendant MEDINA-CAMPOS through the use of an interpreter at his rearraignment and the entry of his guilty plea. The

defendant affirmatively stated he had read the written plea agreement with the help of an interpreter and understood it. [2:14-CR-022, Dkt. 43 at 8]. The plea agreement contained a paragraph which stated, "Defendant's agreement: The defendant agrees to not file a motion to suppress the evidence seized during the traffic stop on March 12, 2014." [2:14-CR-022, Dkt. 23 at 3].

Defendant signed the plea agreement as did his trial counsel and an interpreter. [2:14-CR-022, Dkt. 23 at 6]. The signed plea agreement also stated defendant understood his rights to plead not guilty, to have a jury trial, to have his guilt proved beyond a reasonable doubt, to cross-examine and call witnesses, and the right against compelled self-incrimination. [*Id.* at 1]. Defendant further acknowledged he waived these rights and entered a guilty plea to a crime of which he understood the nature and elements. [*Id.* at 1-2]. The guilty plea was supported by a factual resume which was signed by defendant and which defendant adopted under oath. In exchange the government agreed to make a non-binding sentencing recommendation. Although the 126-month sentence imposed was higher than the recommendation, it was still below the minimum guideline range. Further, the government fully honored its agreement which was to make a "non-binding recommendation." Defendant's claim that language was a barrier to his full comprehension of the proceedings against him is rebutted by the record and does not require the Court to conduct an evidentiary hearing on this matter.

Defendant also claims he received ineffective assistance of counsel because counsel failed to file a motion to suppress. The government submitted as an appendix to their response an affidavit written and signed by trial counsel. As stated above, trial counsel stated in her affidavit she visited defendant at the jail multiple times and that she utilized the services of an

interpreter each time a plea agreement was discussed. Counsel stated she researched and prepared a motion to suppress. [Dkt. 6 at 7]. According to counsel, the government, as a result of plea negotiations, offered to accept a guilty plea to Count 2 and defendant's agreement to not pursue a motion to suppress in exchange for a recommendation of a 120-month sentence. [*Id.*]. Counsel stated she discussed the plea agreement with defendant, with the use of an interpreter, and explained the plea agreement gave defendant an additional reduction below the calculated plea guidelines. [*Id.*]. Counsel stated she also expressed her opinion that she did not believe the motion to suppress had a high likelihood of success. [*Id.*]. The defendant was given an opportunity to object to this affidavit. The only objection the defendant submitted was that, "Petitioner alleges that he did not understand that the nature of the plea was conditional or that he would waive the filing of the Motion to Suppress had he accepted the plea." [2:15-CV-0182, Dkt. 9 at 1].

The defendant's allegations and his objection to trial counsel's affidavit are rebutted by the record, particularly the transcript of the plea and sentencing. At both the rearraignment, where defendant pled guilty, and at the sentencing, an interpreter was present and interpreted the proceedings for the defendant. The interpreter signed the plea agreement, in which defendant agreed to not pursue a motion to suppress [Dkt. 23 at 3, 6] and also signed the factual resume [Dkt. 25 at 4]. Not only were all proceedings in open court interpreted into defendant's native language, but all critical plea documents were also interpreted. The pleadings and documents filed of record are sufficient to the extent an evidentiary hearing is not warranted. The record clearly shows defendant knowingly and voluntarily entered a guilty plea, that such plea was entered only after meeting with his counsel with the aid of an interpreter, and after being advised

HAB55\R&R\Medina-Campos-182.DNY:1
2:14-CR-0022                         Page 8 of 10

about the positive and negative consequences of entering a plea.[2] The Court records establish defendant knowingly waived his opportunity to file a motion to suppress. Defendant was admonished by the Court before his plea was accepted and his plea was freely, knowingly and voluntarily made. Defendant asks this Court to ignore the testimony he gave under oath and instead to accept his after the fact, self-serving argument that he did not understand the proceedings and should not be held to his statements made under oath.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by defendant MIGUEL HUMBERTO MEDINA-CAMPOS should be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _15th_ day of September 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[2] Pleadings of record, other than counsel's affidavit, particularly the factual resume and plea agreement, were signed by the defendant, his counsel, and the interpreter, indicating counsel discussed the documents with defendant MEDINA-CAMPOS with the aid of an interpreter.

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).